# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

CALVIN D. LEE,

        **Plaintiff,**

  v.                             **Case No. 22-CV-1089**

MILWAUKEE COUNTY, WISCONSIN,

        **Defendant.**

---

## DECISION AND ORDER

---

Plaintiff Calvin D. Lee, who is representing himself and currently confined at Stanley Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Lee was allowed to proceed on a claim against Milwaukee County pursuant to *Monell v. New York City Dep't of Soc. Services*, 436 U.S. 658 (1978). The County filed a motion for summary judgment (ECF No. 36), and Lee filed a motion to deny the County's motion for summary judgment (ECF No. 44). The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 14.)

## PRELIMINARY MATTERS

In its reply brief in support of its motion for summary judgment the County argues that Lee failed to follow Federal Rule of Civil Procedure 56 and Civil Local Rule 56 in his response materials. Specifically, Lee did not provide any support for his objections to the County's proposed findings of fact. (ECF No. 47 at 1-2.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's

noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Lee's response materials do not formally conform with the rules, his response contains sufficient information to allow the court to rule on the defendant's motion for summary judgment. In his response Lee cites to the County's exhibits. For summary judgment purposes the complaint will be converted into an affidavit, *see Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). Where Lee uses facts that cannot be supported by the record or his complaint, the court will disregard those facts.

In short, the court will consider Lee's response where appropriate in deciding the summary judgment motions.

## FACTS

From December 16, 2020, to April 18, 2023, Lee was incarcerated as a pretrial detainee at Milwaukee County Jail. (ECF NO. 38, ¶1.) The policies and procedures the Jail had in place during this period are largely undisputed.

*Covid Policies*

When the COVID-19 pandemic hit, the Jail, "based on guidance and direction from trained medical professionals, including public health officials and the Centers of Disease Control and Prevention (CDC)," put into place several policies and procedures to mitigate the spread of COVID. (*Id.*, ¶ 6.) These included policies to "enhance social distancing," masking policies, and testing policies. (*Id.*, ¶¶ 9-22.) In an effort to minimize the spread of COVID among the population, the Jail allowed only half of

2

each housing unit out of their cells into the dayroom. (*Id.*, ¶ 12.) According to Lee, this resulted in "26.5 hour lock-ins every other day," which the court understands to mean that the policy created periods where prisoners remained in their cell for 26.5 hour periods. (ECF No. 46, ¶ 7.) The County asserts that these procedures were not imposed for punitive reasons but to ensure the safety and health of staff and the prisoner population. (ECF No. 38, ¶¶ 8-9.)

Lee states that the County willfully enacted these policies knowing that it would result in prisoners being confined for more than 23 hours a day. (ECF No. 46, ¶ 7.) As a result, the COVID policies were punitive and unconstitutional. (*Id.*, ¶ 12.) He also asserts that the policies were ineffective because twice he contracted COVID, which spread rampantly throughout the Jail population. (*Id.*, ¶¶ 3, 13.)

*Policies relating to Jail Conditions*

The County asserts that it has several policies in place regarding "cleanliness, maintenance, and hygiene." (ECF No. 38, ¶ 40.) These policies ensure that prisoners have adequate cleaning supplies; require prisoners to clean their cells every day; engage the service of prisoner workers for issues that cannot be rectified by a prisoner, such as when a prisoner gets sick; engage the services of prisoner workers to clean the common areas; require the showers be cleaned weekly using products that prevent mold and mildew; engage the services of a biohazard cleaning crew when the situation calls for it; and engage the services of a plumber as needed. (*Id.*, ¶¶ 42-64.) When plumbers are not on site, the County engages plumbing services for issues that require immediate action. (*Id.*, ¶¶ 65-66.) For "non-emergent plumbing related problems," Jail

3

staff submit work orders to the Jail's maintenance team, who triage them as appropriate. (*Id.*, ¶¶ 68-69.) The County also has policies regarding pest control and routinely engages the services of Batzner Pest Control. (*Id.*, ¶¶ 71-73.)

A 43-page Request Report that documents all grievances, appeals, and non-medical requests submitted by Lee during his incarceration at the Jail (ECF No. 39-12), according to Lee, "acknowledge[es] the objective seriousness of several instances; some in which [*sic*] lasted for weeks." (ECF No. 45 at 13.) However, he does not point to specific grievances or communications. In fact, a substantial portion of the 43 pages relate to Lee's efforts to obtain information about lawsuits he had filed or was contemplating filing, such as requests for copies of various statutes, requests for information about how to report misconduct on behalf of the State and district attorney, a printout of his CCAP, requests to see his discovery, etc.

Lee also asserts that on several occasions Jail staff failed "to deploy 'in-place' and 'on-call' assets" to address conditions issues. (ECF No. 46, ¶ 39.) This includes timely dealing with mold in the shower, not fixing sinks or toilets within 24 hours, or handling corroded fixtures in his cell. (*Id.*, ¶¶ 53, 98.) Lee states that for three days his sink was clogged, which made it hard to get drinking water. (*Id.*, ¶ 103.) The Jail's failure to use the on-call plumber and get the sink fixed immediately created punitive conditions. (*Id.*, ¶ 104.) Lee acknowledges that he still had access to drinking water from his sink and in the day room, although he contends the water pressure was low and the day room was not always accessible. (*Id.*, ¶ 106.)

4

*Healthcare Policies*

The County asserts that it has an overarching policy in place to provide medical and mental health services to its prisoners, and that it has contracted with Wellpath, a third party who provides medical services to jails and institutions, to enact this policy and supplement the County's broad policy with their procedures and practices. (ECF No.38, ¶ 23, 26.) As such, it is Wellpath's staff, not the Jail staff, who provides medical and mental health care services, and Wellpath's staff makes decisions about what kind of health care to provide, including prescribing medication, determining if specialty care is needed, and determining if a prisoner needs to be enrolled in the chronic diseases or special needs program. (*Id.*, ¶¶ 27-33.) At most the Jail staff provides basic first aid and routs medical request slips to the appropriate Wellpath staff member. (*Id.*, ¶¶ 27, 29.) The County states that it is not aware of any pattern or practice or violation of Wellpath's practices and procedures that could cause a prisoner to receive objectively unreasonable healthcare. (*Id.*, ¶ 25.)

Lee asserts that he failed to receive proper care for his traumatic brain injury and related issues. (ECF No. 46, ¶ 23.) His treatment for his other health issues was also delayed. (*Id.*, ¶ 24.) As evidence of the pattern of inadequate healthcare, Lee points to his 43-page Request Report, which he states lists all of the County's constitutional violations when it comes to healthcare (*Id.*, ¶ 25; ECF No. 39-12.) According to Lee, the volume of the report alone shows that the County was on notice that there was a pattern or practice to provide inadequate healthcare. (ECF No. 46, ¶

5

25.) However, he does not explain how the 43-page document demonstrates the pattern.

Lee further states that it took him over a year to been seen by a psychiatrist, that he was not provided treatment for his nerve pain, and that he was not allowed into the chronic disease program. (ECF No. 45 at 3-5, 7.) Lee also asserts the County adopted Wellpath's "Cost Containment Policy/Program" where Wellpath would purposely deny medical care to keep costs down. (*Id.* at 7.) While he provides no evidence of this program, he highlights several cases that purportedly discuss the policy. (*Id.* at 7-8.) However, all these cases list only Wellpath as the defendant and are not evidence that the County was aware of this policy. Additionally, Lee states he was not allowed to use the services of the Veteran's Administration (VA), which denied him key mental health care. (ECF No. 38, ¶ 79-80.)

The County notes that Lee "impermissibly interchanges [the Jail] correctional staff with Wellpath's health care professionals." (ECF No. 47 at 8.) It is Wellpath that has the policies regarding healthcare decisions, and Wellpath's staff either enacts those policies or disregards them. (*Id.*) Additionally, Wellpath's staff is responsible for responding to grievances or medical requests, and the Jail staff would have no knowledge of any medical issues of which a prisoner was complaining. (*Id.*) Specifically, Wellpath made the decision not to arrange for mental health care from the VA and the decisions on how to treat Lee's nerve pain, including responding to Lee's grievances about inadequate treatment for these issues. (ECF No. 38, ¶¶ 80-95.)

Lee also assets that the County's policy for hunger strikes is unconstitutional. He went on a hunger strike to protest the conditions of his confinement, and as a result he was placed on "suicide observation" status and relocated to the Special Needs Housing Unit. (ECF No. 46, ¶ 30.) He states this is a punitive policy because it places unnecessary restraints on his liberty. (*Id.*) The County asserts that it is Wellpath's medical staff who made the determination on whether a special needs placement or placement on suicide watch was appropriate. (ECF No. 38, ¶¶ 35-37.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be

7

of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Lee claims that the County has policies or practices that violate his constitutional rights. While § 1983 typically allows a plaintiff to sue only a person who violates his rights while acting under the color of law, in *Monell* the United States Supreme Court allowed a municipality to be sued where their policies or practices violate a person's rights. *Monell*, 436 U.S. at 690. To prove a *Monell* claim, a "plaintiff must show that some municipal action directly caused him to suffer a deprivation of a federal right, and that the municipality took the action with conscious disregard for the known or obvious risk of the deprivation." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021).

In other words, there must be an underlying constitutional violation caused by the municipal action. *Dean,* 18 F.4th at 236. There are three types of municipal action that can give rise to a *Monell* claim: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the

8

constitutional injury was caused by a person with final policymaking authority." *Id.* at 235 (quoting *LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021)). Where a policy is, on its face, lawful, a plaintiff "must prove a prior pattern of similar constitutional violations resulting from the policy." *Id.* at 236. In fact, "*considerably more proof than the single incident will be necessary in every case* to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Id.* (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985) (emphasis in original)).

*Lee's Claim regarding the COVID Policies*

Lee argues that the COVID policies were unconstitutional on their face because they deprived him of recreation time. He also asserts that they were unconstitutional because they did not prevent him from getting COVID.

Courts have said that the test to determine whether an institution appropriately handled COVID issues is whether it responded reasonably to the risk. *Mays v. Dart*, 947 F.3d 810, 820 (7th Cir. 2020). The court is to give "substantial discretion" to prison officials "'to devise reasonably solutions to the problem the face' particularly when safety and security interests are at stake." *Id.* (quoting *Florence v. Bd. Of Chosen Freeholders of Cty. Of Burlington*, 556 U.S. 318, 326 (2012)). This includes giving "'deference to policies and practices needed to maintain order and institutional security.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 399-400 (2015)).

Lee has presented no evidence that would create a material question of fact as to whether the County's COVID policies were reasonable. Keeping prisoners in cells for a slightly longer period of time than what is permissible in non-COVID circumstances in order to mitigate the spread is reasonable. And the fact that Lee contracted COVID is not proof that the policies and practices were unconstitutional. The County's responsibility was to mitigate the spread of COVID, not stop it. Many non-incarcerated people contracted COVID despite rigorous efforts to avoid its spread.

Summary judgment is granted in the County's favor on Lee's COVID claim.

*Lee's Claim regarding the Conditions Policies*

Lee does not dispute that the County's policies concerning the conditions of the Jail are constitutional on their face. Instead, he argues that there was a widespread practice of County employees not following the policies, thus causing constitutional violations. Where a plaintiff makes such an argument, a court must "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). While the Seventh Circuit Court of Appeals has "not adopted bright-line rules regarding the quantity, quality, or frequency of conduct needed to prove a widespread custom or practice . . . 'what is needed is evidence that there is a true municipal policy at issue, not a random event.'" *Id.* (quoting *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008)). A showing of a pattern of negligent actions is insufficient. *Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016). Also, a plaintiff "must show more than the deficiencies specific to his own experience, of course." *Id.*

10

Lee's main source of evidence is his 43-page Request Report, which illustrates all the complaints he made during his time at the Jail. However, the report does not demonstrate that there was a widespread pattern or practice of creating unconstitutional conditions at the Jail. The report does not demonstrate that any of Lee's complaints had merit, were addressed, or were resolved. Lee also does not direct the court to any specific entries that illustrate a pattern of unconstitutional conditions. The court is not required to root through the record to discern the pattern that Lee is trying to demonstrate. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702-703 (7th Cir. 2010).

Further, conditions are unconstitutional where they deprive a prisoner of "the minimal civilized measure of life's necessities." *Hardeman v. Curran*, 933 F.3d 816, 822 (7th Cir. 2019) (quoting *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013)). Lee complains that Jail officials did not deploy their on-call plumbers to address his plumbing issues within 24 hours. He also asserts that they did not deal with the mold in the showers or fix corroded fixtures in a timely fashion. Such complaints do not rise to the level of a constitutional violation. A single instance of a clogged sink or toilet is not an objectively serious deprivation. *Id.* at 823-824.

It is undisputed that the showers were susceptible to mold, but the Jail staff had the means of combatting the issue and deployed them on a weekly basis. As for access to water, Lee's own evidence demonstrates that he had access to water. Lee does not provide enough detail about the other alleged violations, such as a pest problem or corroded fixtures, that would allow a factfinder to reasonably conclude the

11

conditions were unconstitutional. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.").

Summary judgment on Lee's claim regarding the conditions policies is granted in favor of the defendants.

*Lee's Claim regarding Healthcare Policies*

Lee states that the County had a widespread practice of failing to follow its medical policies. The County argues that the specific policies were set by Wellpath; the County had no notice of whether Wellpath was following its policies or not.

While it is undisputed that the County contracted with Wellpath to carry out its healthcare program, "the constitutional duty under the Eighth and Fourteenth Amendments to provide adequate healthcare rests on the custodian. . .. [A] government entity 'cannot shield itself from § 1983 liability by contracting out its duty to provide medical services.'" *Daniel*, 833 F.3d at 737 (quoting *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012)). However, to hold the County liable, a plaintiff must show that the County was "aware of the risk created by the custom or practice." *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 303 (7th Cir. 2010). In other words, a plaintiff must demonstrate that the County's policy making officials "were on notice that the municipality's medical policies were causing serious problems at the jail." *Hahn v. Walsh*, 762 F.3d 617, 638 (7th Cir. 2014).

A review of the 43-page Request Report shows that any medical-related complaints went directly to Wellpath staff. Lee provides no evidence that the County was aware of his complaints or that Wellpath was not providing the care it was contracted to provide. His claim is merely a bald assertion, which is insufficient to create a genuine issue of material fact. *Drake v. Minn Mining & Mfg Co.*, 134 F.3d 878, 887 (7th Cir. 1998).

Even if Lee could show that the County was on notice that Wellpath's practices and procedures were causing problems, he also fails to prove that there was a widespread pattern or practice of providing objectively unreasonable medical care. As he does for his conditions claim, Lee relies on his 43-page report but does not point to any specific entries in the report that evidence a widespread pattern or practice of failing to provide reasonable medical care. Also, all of Lee's examples concern his own healthcare and, as mentioned above, to prove a widespread pattern or practice a plaintiff "must show more than the deficiencies specific to his own experience, of course." *Daniel* 833 F.3d at 734.

Summary judgment is granted in favor of the County on the healthcare policy claims.

## CONCLUSION

For the foregoing reasons, the County's motion for summary judgment is granted and Lee's motion to deny the County's motion for summary judgment is denied. Because there are no remaining claims, the case is dismissed.

Case 2:22-cv-01089-WED  Filed 05/14/24  Page 13 of 15  Document 49

# ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Milwaukee County's motion for summary judgment (ECF No. 36) is **GRANTED.**

**IT IS FURTHER ORDERED** that Lee's motion to deny the County's motion for summary judgment (ECF No. 44) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 14th day of May, 2024.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge

15